Justin Augustine (CA Bar No. 235561)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
(503) 910-9214
jaugustine@biologicaldiversity.org

Brian Segee (CA Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
(805) 750-8852
bsegee@biologicaldiversity.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LOS PADRES FORESTWATCH; EARTH ISLAND INSTITUTE; and CENTER FOR BIOLOGICAL DIVERSITY,**<br><br>            Plaintiffs,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE; KEVIN B. ELLIOTT, Supervisor, Los Padres National Forest; and UNITED STATES FISH AND WILDLIFE SERVICE,**<br><br>            Defendants. | Case No. 2:19-cv-05925<br><br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## <u>INTRODUCTION</u>

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

2.  This Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

3.  Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1).

4.  Plaintiffs Los Padres ForestWatch, Earth Island Institute and Center for Biological Diversity challenge the "Tecuya Project" in the Los Padres National Forest. The Project will log over 1,000 acres of National Forest land, destroying California condor habitat and desecrating the Antimony Inventoried Roadless Area in the process.

5.  Inventoried Roadless Areas are protected from logging by the federal Roadless Area Conservation Rule ("Roadless Rule"), except in limited circumstances when the logging of small diameter trees is allowed.  Here, the U.S. Forest Service violated the Roadless Rule by authorizing the logging of all diameter classes and by failing to protect the Area's roadless characteristics.

6.  The U.S. Forest Service also violated the National Environmental Policy Act ("NEPA") when approving the Tecuya Project.  The agency wrongly relied on a "categorical exclusion" under NEPA instead of conducting an environmental assessment ("EA") or environmental impact statement ("EIS"), thereby short-circuiting public involvement and the consideration of alternatives to the Project.

7.  Moreover, U.S. Fish and Wildlife Service condor tracking data shows that the Tecuya Project could impact over 50 condor roost sites.  These roost sites are typically large live or dead trees that are used by condors for resting overnight between long flights.  The Forest Service Decision Memo for the Project ignores these known roost sites and thus does not protect them as required by law.  Plaintiffs have sent the

Forest Service a 60-day notice of intent to sue under the Endangered Species Act ("ESA") if the Forest Service does not correct this wrongful action.

8.     The U.S. Fish and Wildlife Service is also complicit in causing harm to the endangered California condor.  The Fish and Wildlife Service ignored its own data showing the presence of numerous roosting sites in the Project area and therefore was arbitrary and capricious under the ESA and Administrative Procedure Act ("APA") when it wrongly concluded the Project is "not likely to adversely affect" the California condor.

**PARTIES**

9.     The Forest Service approved the Tecuya Project in the Los Padres National Forest on April 9, 2019, in contravention of NEPA, the National Forest Management Act (NFMA), the ESA, the Roadless Area Conservation Rule, and the Administrative Procedure Act (APA).

10.     In addition, the U.S. Fish and Wildlife Service issued a "not likely to adversely affect" finding for the Project in violation of the ESA and APA.

11.     Some of Plaintiffs' members have used and enjoyed the tracts of forest and lands where the Project is set to occur, and have specific plans to return.  They will be directly harmed by this Project.

12.     Plaintiff LOS PADRES FORESTWATCH ("ForestWatch") is a nonprofit corporation headquartered in Santa Barbara, California.  The organization's mission is to protect and restore public lands along the Central Coast through legal advocacy, scientific collaboration, and community outreach.  ForestWatch focuses its work throughout the Los Padres National Forest and nearby public lands.  To further its mission and protect the interests of its members and supporters in preserving public lands, ForestWatch monitors forest conditions and activities in the Los Padres National Forest and reviews and comments on proposed Forest Service projects.  ForestWatch also organizes habitat restoration and forest stewardship projects using crews of

volunteers, making the forest a better place for all to enjoy and visit.  In addition, ForestWatch programs seek to engage underserved youth by providing them with opportunities to explore nature and foster an appreciation of the outdoors.

13.     ForestWatch's members include individuals who regularly use public lands within the Los Padres National Forest, including the Tecuya Project areas proposed for logging in particular, for scientific study, recreational enjoyment, aesthetic beauty, and nature photography.  These members' interests will be irreparably harmed by the planned logging, as they will no longer be able to take nature photographs of the area in its pre-logging state, enjoy the aesthetic beauty of the unlogged forest habitat and its inhabitants, or observe endangered California condors in the area.

14.     Plaintiff EARTH ISLAND INSTITUTE (EII) is a nonprofit corporation organized under the laws of the State of California.  EII is headquartered in Berkeley, California.  EII's mission is to develop and support projects that counteract threats to the biological and cultural diversity that sustains the environment.  Through education and activism, these projects promote the conservation, preservation and restoration of the earth.  One of these projects is the John Muir Project—whose mission is to protect all federal public forestlands from exploitation that undermines and compromises science-based ecological management.  John Muir Project offices are in San Bernardino County, California.  EII is a membership organization with over 15,000 members in the U.S., over 3,000 of whom use and enjoy the National Forests of California for recreational, educational, aesthetic, spiritual, and other purposes.  EII through its John Muir Project has a longstanding interest in protection of national forests.  EII's John Muir Project and EII members actively participate in governmental decision-making processes with respect to national forest lands in California and rely on information provided through the NEPA processes to increase the effectiveness of their participation.

15.     EII's members include individuals who regularly use public lands within the Los Padres National Forest, including the Tecuya Project areas proposed for logging

in particular, for scientific study, recreational enjoyment, aesthetic beauty, and nature photography.  These members' interests will be irreparably harmed by the planned logging, as they will no longer be able to scientifically study these areas in their pre-logging state, take nature photographs of the area in its pre-logging state, or enjoy the aesthetic beauty of the unlogged forest habitat and its inhabitants.

16.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the Center) is a non-profit corporation with offices in Oakland, Los Angeles, and Joshua Tree, California. The Center is actively involved in species and habitat protection issues throughout North America and has about 69,000 members, including many members who reside and recreate in California.  One of the Center's primary missions is to protect and restore habitat and populations of imperiled species, including from the impacts of logging.

17.    The Center's members and staff include individuals who regularly use and intend to continue to use the Los Padres National Forest, including the lands that are now planned for logging as part of the Tecuya Project.  These members and staff use the area for observation, research, aesthetic enjoyment, and other recreational, scientific, spiritual, and educational activities.  Many of the Center's staff and members use the area to enjoy its character and to observe or study imperiled species, like the condor, which have habitat in the Project area.  These members' interests will be irreparably harmed by the planned logging in the Project area, as they will neither be able to visit and enjoy this area in its unlogged state any longer, nor be able to observe or attempt to observe the species which use and are dependent on these areas in their unlogged state.

18.    This suit is brought by ForestWatch, EII, and the Center on behalf of themselves and their adversely affected members and staff.  Plaintiffs and their members' present and future interests in and use of the Tecuya Project areas are and will be directly and adversely affected by the challenged decision.  Those adverse effects include, but are not limited to: (1) impacts to native plants and wildlife and their habitats within and around the Project areas from logging; (2) reduction and impairment of

recreation opportunities; (3) impaired aesthetic value of forest lands, trails, and landscapes caused by Defendants' logging; and (4) loss of scientific study and viewing opportunities with regard to wildlife in areas proposed for logging. In addition, Plaintiffs and their members and staff have an interest in ensuring that Defendants comply with all applicable laws, regulations, and procedures pertaining to the management of national forest lands.

19.     Because Defendants' actions approving the Project violate the law, a favorable decision by this Court will redress the actual and imminent injury to Plaintiffs.

20.     If the Forest Service had complied with its legal duties under NEPA, it would have prepared an Environmental Assessment (EA) or Environmental Impact Statement (EIS) with a range of alternatives, thereby undertaking a more thorough environmental analysis and minimizing or averting the harm to Plaintiffs' members that will be caused from the logging and destruction of wildlife habitat by the Project.

21.     Defendant KEVIN B. ELLIOTT is sued in his official capacity as the Supervisor of the Los Padres National Forest. He is directly responsible for forest management in the Los Padres National Forest and for ensuring that all resource management decisions comply with applicable laws and regulations. Supervisor Elliott signed the Decision Memo for the Tecuya Project challenged here.

22.     Defendant UNITED STATES FOREST SERVICE is a federal government agency within the Department of Agriculture, which holds the National Forests in trust for the American people and is responsible for actions in the Tecuya Project area.

23.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the federal agency within the Department of Interior charged with responsibility for conserving endangered and threatened species under the Endangered Species Act, for enforcing and implementing the ESA, and for complying with the APA in connection with the Service's ESA actions.

## STATUTORY FRAMEWORK

### THE ADMINISTRATIVE PROCEDURE ACT ("APA")

24.     The APA allows persons and organizations to challenge final agency actions in the federal courts. 5 U.S.C. §§ 702, 704.  The APA declares that a court shall hold unlawful and set aside agency actions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* § 706(2)(A).

### THE NATIONAL ENVIRONMENTAL POLICY ACT ("NEPA")

25.     Congress enacted NEPA, 42 U.S.C. §§ 4321-4370h, to, among other things, "encourage productive and enjoyable harmony between man and his environment" and to promote government efforts "that will prevent or eliminate damage to the environment." *Id.* § 4321.  As a general matter, NEPA requires that federal agencies analyze and disclose to the public the environmental impacts of their actions. *Id.* § 4332(2)(C).

26.     To this end, the Council on Environmental Quality (CEQ) has promulgated regulations implementing NEPA.  Among other things, the rules are intended to "tell federal agencies what they must do to comply with the procedures and achieve the goal of [NEPA]," to "insure that environmental information is made available to public officials and decisions are made and before actions are taken," and to ensure "better decisions" and "foster excellent action." 40 C.F.R. § 1500.1(a)-(c).

27.     CEQ's regulations mandate that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken," and emphasize that "[a]ccurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." 40 C.F.R. § 1500.1(b).

28.     Under NEPA, federal agencies are required to consider the potential environmental impact of all agency actions. 42 U.S.C. §§ 4321-4370m.  Where agency actions may have potentially significant effects, the agency must prepare an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF          Page 6

Environmental Impact Statement ("EIS"). 40 C.F.R. § 1502.9.  Where the agency is not sure whether an EIS is required, it must prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1508.9.

29.  NEPA requires agencies to develop procedures to implement the Act. 40 C.F.R. § 1507.3.  These procedures permit agencies to establish specific categories of actions that "do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect," known as "categorical exclusions." 40 C.F.R. §§ 1508.4 & 1507.3(b).  For these categories of actions, the agency need not prepare either an EA or an EIS, but only if no "extraordinary circumstances" exist related to the proposed action. *See e.g.* 36 C.F.R. § 220.6.

30.  Forest Service regulations define the "extraordinary circumstances" that may require preparation of an EA or EIS even where the action meets the definition of a particular categorical exclusion.  These circumstances include the presence of, and impacts to:

(i)  Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species; … [and]

(iv)  Inventoried roadless area or potential wilderness area ….

36 C.F.R. § 220.6(b)(1)(i) & (iv).  The "mere presence" of one of these resource conditions does not require the agency to prepare an EA or EIS. 36 C.F.R. § 220.6(b)(2). Instead, "[i]t is the existence of a cause-effect relationship between a proposed action and the potential effect on these resource conditions, and if such a relationship exists, the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist." *Id.*

31.  In undertaking environmental analysis, each agency must consider environmental impacts including direct, indirect, and cumulative effects. 40 C.F.R. § 1508.8(b).  Cumulative impacts are defined as "the impact on the environment which

results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (federal or non-federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

32.    In addition, when conducting environmental analysis pursuant to an EA or EIS, an agency must consider alternatives to the proposed action. *See e.g.* 40 C.F.R. § 1508.9(b).

## THE NATIONAL FOREST MANAGEMENT ACT ("NFMA")

33.    The National Forest Management Act directs the Forest Service to develop Land and Resource Management Plans ("Forest Plans") by which to manage each National Forest. 16 U.S.C. § 1604.

34.    The Forest Service implements a Forest Plan by approving or disapproving particular projects such as the Tecuya Project here.  Proposed projects must be consistent with the Forest Plan. *Id.* at § 1604(i).

## THE ROADLESS AREA CONSERVATION RULE ("ROADLESS RULE")

35.    The Roadless Area Conservation Rule, adopted by the Forest Service in 2001, generally prohibits road construction and the cutting, sale, or removal of trees within identified "inventoried roadless areas." 36 C.F.R. § 294.12(a) & 294.13(a), published in 66 Fed. Reg. 3244, 3272-73 (Jan. 12, 2001).

36.    However, the Forest Service may approve logging "infrequent[ly]" in inventoried roadless areas if the agency determines that certain circumstances exist, including the following:

> (1) The cutting, sale, or removal of *generally small diameter timber* is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.

      (i) To improve threatened, endangered, proposed, or sensitive species habitat; or

      (ii) To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period.

36 C.F.R. § 294.13 (emphasis added).

37.    Roadless area characteristics as defined in § 294.11 are as follows: (1) High quality or undisturbed soil, water, and air; (2) Sources of public drinking water; (3) Diversity of plant and animal communities; (4) Habitat for threatened, endangered, proposed, candidate, and sensitive species and for those species dependent on large, undisturbed areas of land; (5) Primitive, semi-primitive nonmotorized and semi-primitive motorized classes of dispersed recreation; (6) Reference landscapes; (7) Natural appearing landscapes with high scenic quality; (8) Traditional cultural properties and sacred sites; and (9) Other locally identified unique characteristics.

## THE ENDANGERED SPECIES ACT ("ESA")

38.    Section 7 of the ESA requires each federal agency, in consultation with the U.S. Fish and Wildlife Service, to insure that any action authorized, funded, or carried out by the agency is not likely to (1) jeopardize the continued existence of any threatened or endangered species or (2) result in the destruction or adverse modification of the critical habitat of such species. 16 U.S.C. § 1536(a)(2).

39.    "Action" is broadly defined to include actions that may directly or indirectly cause modifications to the land, water, or air; and actions that are intended to conserve listed species or their habitat. 50 C.F.R. § 402.02.

40.    If listed or proposed species may be present in the project area, the federal agency must prepare a "biological assessment" to determine whether the listed species

may be affected by the proposed action. 50 C.F.R. § 402.12.

41.     If the agency determines that its proposed action may affect any listed species or critical habitat, the agency must normally engage in "formal consultation" with the U.S. Fish and Wildlife Service. 50 C.F.R. § 402.14.  However, an agency need not initiate formal consultation if, as a result of the preparation of a biological assessment or as a result of informal consultation with the U.S. Fish and Wildlife Service, the agency determines, with the written concurrence of the U.S. Fish and Wildlife Service, that the proposed action is not likely to adversely affect any listed species or critical habitat. *Id*.

42.     If the U.S. Fish and Wildlife Service concludes that the proposed action "will jeopardize the continued existence" of a listed species, a "biological opinion" must outline "reasonable and prudent alternatives." 16 U.S.C. § 1536(b)(3)(A).  If the biological opinion concludes that the action is not likely to jeopardize the continued existence of a listed species, and will not result in the destruction or adverse modification of critical habitat, the U.S. Fish and Wildlife Service must provide an "incidental take statement," specifying the amount or extent of such incidental taking on the species, any "reasonable and prudent measures" that USFWS considers necessary or appropriate to minimize such impact, and setting forth the "terms and conditions" that must be complied with by the agency to implement those measures. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i).

43.     Agencies must also reinitiate consultation on agency actions over which the federal agency retains, or is authorized to exercise, discretionary involvement or control . . "(b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered . . . ." 50 C.F.R. § 402.16.

44.     After the initiation or reinitiation of consultation, the federal agency is prohibited from making any irreversible or irretrievable commitment of resources with

respect to the agency action. 16 U.S.C. § 1536(d).

45.     In fulfilling its obligation to ensure that its actions do not jeopardize the continued existence of any endangered species or destroy or adversely modify its critical habitat, the federal agency is required to use the best scientific and commercial data available. 16 U.S.C. § 1536(a)(2).

## **FACTUAL BACKGROUND**

46.     On March 13, 2018, the Los Padres National Forest proposed the Tecuya Project.  The Forest Service stated that it did not plan to conduct an EA or EIS for the Project because the agency believed the Project would fit within the "categorical exclusion" for "[t]imber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction." *See* 36 C.F.R. § 220.6(e)(6).

47.     Plaintiffs commented on the Tecuya Project proposal in April 2018, noting, among other things:

- The importance of the Project area as a roosting area for the endangered California condor;
- The significant harm logging can cause to habitat for condors and other wildlife;
- The lack of science supporting the Forest Service's proposal;
- The published science showing the Forest Service's proposal would be ineffective;
- The undeveloped character of the Antimony Inventoried Roadless Area that would be damaged by the logging;
- The Roadless Rule's requirement to log only small diameter trees;
- The need to prepare an EA or EIS;
- The need to disclose and address the cumulative impacts of the Tecuya Project, together with other projects, including the directly adjoining Cuddy

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF            Page 11

Valley Project which would log or otherwise remove trees on a neighboring 1,200 acres.

48.     Plaintiffs also provided the Forest Service with supplemental comments containing additional information, such as with respect to the Project's impacts to condors, in September 2018, December 2018, and April 2019.

49.     On April 9, 2019, Los Padres National Supervisor Kevin Elliott signed a Decision Memo approving the Tecuya Project.  The Decision Memo notes that the agency received public comments but provides no substantive responses to any of them. The Decision Memo further states that the agency's decision "is not subject to administrative review or appeal."  The Decision Memo concludes that "[t]his action is categorically excluded from documentation in an environmental impact statement (EIS) or an environmental assessment (EA)," relying on 36 CFR 220.6(e)(6).

50.     Concerning potential impacts to the Antimony Inventoried Roadless Area, the Decision Memo relies on the October 12, 2018, Decision Memorandum by Deputy Regional Forester Barnie Gyant concluding that the Tecuya Project "is consistent with the 2001 Roadless Area Conservation Rule."  The Decision Memorandum does not address, however, the fact that the Project authorizes the logging of large trees, and instead the Decision Memorandum assumes that only "trees less than 21 inches DBH [diameter at breast height]" will be logged.  The Decision Memorandum also does not explain why a 21 inch diameter tree is a small diameter tree.

51.     Concerning potential impacts to endangered California condors, the Decision Memo relies on a Forest Service Biological Assessment and a concurrence letter from the U.S. Fish and Wildlife Service (USFWS) concluding that the proposed Project is "not likely to adversely affect" the California condor.  Neither the Forest Service's Decision Memo nor the USFWS concurrence, however, acknowledge or address the detailed roosting data that shows that condors are utilizing large live trees and snags within the Tecuya Project area and within the Antimony Inventoried Roadless

Area for overnight roosting.

52.     The Decision Memo contains multiple, contradictory, statements about tree diameter limits for logging.  For instance, the Decision Memo states that "[t]rees would be removed throughout all diameter classes and would include the removal of commercial trees," but also states that "only smaller trees (21 inches diameter breast height or less) would be cut or removed for safety or operability reason."  Moreover, none of the Project's "Design Features" included in the Decision Memo's appendix include any diameter limits, and the Decision allows large snags to be removed "at the discretion" of the logger.

53.     The Tecuya Project also impacts the California spotted owl and yellow-blotched salamander, which are "Sensitive Species."

54.     The Los Padres Forest Plan and the Tecuya Project Decision Memo require surveys for spotted owls prior to Project implementation. To date, on information and belief, the Forest Service has not conducted the surveys.

55.     The Tecuya Decision also states that "suitable habitat for [the yellow-blotched salamander] is present within the project area, but the species has not been documented."  There are, however, at least two known occurrences within the Project area.

56.     In November 2018, the Los Padres National Forest approved the Cuddy Valley Project, which will log or otherwise remove trees on 1,200 acres, including Forest Service land that directly abuts the Tecuya Project.  The Tecuya Decision Memo contains no mention of the adjacent Cuddy Valley project.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### National Environmental Policy Act Violations:  Failure To Prepare An Environmental Assessment Or Environmental Impact Statement

57.     The allegations in all previous paragraphs are incorporated herein by

reference.

58.     NEPA requires federal agencies, including the Forest Service, to complete an EA or an EIS, and to consider reasonable alternatives, before approving any major proposed federal action, unless the proposed action falls under a "categorical exclusion". *See* 40 C.F.R. § 1508.18, 1508.9, 1508.11, 1508.4.

59.     Moreover, even where an action meets the definition of a particular categorical exclusion, if "extraordinary circumstances" exist due to the action, preparation of an EA or EIS is still required. 36 C.F.R. § 220.6.  These "extraordinary circumstances" include the presence of, and impacts to the following "resource conditions":

> (i)     Federally listed threatened or endangered species or designated
> critical habitat, species proposed for Federal listing or proposed
> critical habitat, or Forest Service sensitive species; … [and]
>
> (iv)    Inventoried roadless area or potential wilderness area ….

36 C.F.R. § 220.6(b)(1)(i) & (iv).  The "mere presence" of one of these resource conditions does not require the agency to prepare an EA or EIS rather than use the categorical exclusion, 36 C.F.R. § 220.6(b)(2).  It is "the existence of a cause-effect relationship between a proposed action and the potential effect on these resource conditions, and if such a relationship exists, the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist." *Id.*  If the agency determines that it is uncertain whether the proposed action may have a significant effect on the environment, it must prepare an EA. 36 C.F.R. § 220.6(c).

60.     The Forest Service concluded that the Tecuya Project fits within the following "categorical exclusion": "Timber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction." 36 C.F.R. § 220.6(e)(6).  This "categorical exclusion"

cannot be used for the Tecuya Project, however, because:

- The project size does not allow it.  For example, harvest of live trees is not to exceed 70 acres under a categorical exclusion. 36 C.F.R. § 220.6(e)(12). This Project will log over 1,000 acres of live trees.

- This Project cannot qualify as a "timber stand improvement activity."  The Forest Service defines "timber stand improvement" to be "[a]n intermediate treatment of trees not past the sapling stage made to improve the composition, structure, condition, health, and growth of even- or uneven-aged stands." Forest Service Manual § 2470.5.  The Tecuya Project authorizes logging of trees far past the sapling stage.

- "Extraordinary circumstances" are present and the Forest Service's "extraordinary circumstances" analysis was flawed.  For example, with respect to the federally endangered California condor, the Forest Service ignored the U.S. Fish and Wildlife Service condor tracking data showing the presence of numerous condor roosts in the Project area and thereby failed to protect those roosting sites.  Moreover, the Forest Service failed to ensure that roosting trees – large live trees and snags – will be retained in the Project area.  The Forest Service's "extraordinary circumstances" analysis with respect to the Antimony Inventoried Roadless Area was likewise flawed because the Forest Service ignored impacts to important roadless area characteristics such as the Antimony Area's "[n]atural appearing landscapes with high scenic quality." *See* 36 C.F.R. § 294.11. Logging obviously damages the natural appearance and scenic value of a roadless area and the Forest Service neither mentions nor analyzes such impacts.  Moreover, Forest Service regulations identify classes of actions that "normally" require preparation of an EIS, and these include "[p]roposals that would substantially alter the undeveloped character of an

inventoried roadless area ….," 36 C.F.R. § 220.5(a)(2), which is the case here because logging unequivocally will degrade the Area's character.

- Factors are present that require the preparation of at least an EA. Specifically, NEPA's implementing regulations describe a number of factors to be considered when assessing a project's potential for significant impacts that would necessitate an EA or EIS. 40 C.F.R. §1508.27.  These factors include "the degree to which the effects on the quality of the human environment are likely to be highly controversial," "the degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks," and "the degree to which the proposed action affects public health or safety." *Id*.  Here, those factors are present to a degree that requires the preparation of at least an EA.  For instance, there exists a substantial dispute regarding the efficacy of the Tecuya Project because evidence casts serious doubt upon the Forest Service's conclusions. As described in a journal publication (Syphard et al. 2011) regarding the efficacy of fuelbreaks, the Tecuya Project is too remote to be effective: "[T]his study strongly supports the notion of constructing fuel breaks along the wildland–urban interface where firefighters will have better access to the fuel breaks, and where the fuel breaks will provide an immediate line of defense adjacent to homes that are at risk. . . . [C]onstructing fuel breaks in remote, backcountry locations will do little to save homes during a wildfire because most firefighters will be needed to protect the wildland–urban interface, and fires will not be stopped by those fuel breaks that are located farther away."

- Moreover, the Project will take resources away from effective fire management actions such as creating defensible space near homes.

61.   For the above reasons, the Forest Service's reliance on a "categorical

exclusion", and its failure to complete an EA or an EIS before approving the Tecuya Project, violates NEPA and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA, 5 U.S.C. § 706(2)(A).

## SECOND CAUSE OF ACTION

### National Environmental Policy Act Violations:  Failure To Address Cumulative Impacts

62.     The allegations in each paragraph above are incorporated herein by reference.

63.     NEPA and the APA require federal agencies to ensure that their projects will not cause significant impacts and to consider the cumulative effects associated with a proposed project when doing so. *See e.g.* 40 C.F.R. § 1508.8(b), 40 C.F.R. § 1508.27(b)(7)

64.     Cumulative impacts are defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (federal or non-federal) or person undertakes such other actions.  Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

65.     Despite the fact that the Cuddy Valley Project is directly adjacent to the Tecuya Project, the Forest Service failed to disclose or analyze the cumulative impacts of the two Projects together.  Together, the Projects will log over 2,000 acres of National Forest land, and without a diameter limit, thus leading to degradation of habitat and loss of fire-resistant large trees.

66.     The Forest Service's failure to disclose and analyze the cumulative impacts of the Tecuya Project together with the impacts of the Cuddy Valley Project violates NEPA and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A).

## THIRD CAUSE OF ACTION

### Roadless Area Conservation Rule Violation

67.     The allegations in each paragraph above are incorporated herein by reference.

68.     The Roadless Area Conservation Rule generally prohibits road construction and the cutting, sale, or removal of trees within identified "inventoried roadless areas." 36 C.F.R. § 294.12(a) & 294.13(a), published in 66 Fed. Reg. 3244, 3272-73 (Jan. 12, 2001).  However, the Forest Service may approve logging "infrequent[ly]" in inventoried roadless areas if the agency determines that certain narrow circumstances exist, including the following:

> (1) The cutting, sale, or removal of generally small diameter timber is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.
>
> (i) To improve threatened, endangered, proposed, or sensitive species habitat; or
>
> (ii) To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period.

36 C.F.R. § 294.13.

69.     The Tecuya Project does not comply with the Roadless Rule's mandates because:

- The Forest Service's Roadless Decision Memorandum is based on improper assumptions and falsehoods.  For example, it presumes that the Project involves "mechanical thinning of trees less than 21 inches DBH," but the

Project does not contain a 21 inch diameter cap.

- The Decision Memo and Project documents contain contradictory statements about a diameter limit and allow the logging of any diameter tree in violation of the requirement to limit logging to "generally small diameter timber."

- Even if a 21 inch diameter cap existed, it would not be legal because no explanation is provided, nor could one be, to justify the assertion that a 21 inch diameter tree is a small diameter tree.  Small diameter trees are normally 10 inches or less in diameter on the Los Padres National Forest.

- The Tecuya Project will destroy, rather than improve, habitat for the endangered California condor.  For example, known roosting habitat can be logged and thus will not be properly protected from the logging.

- The Forest Service failed to demonstrate that the Tecuya Project will maintain or improve one or more of the roadless area characteristics as defined in 36 C.F.R. § 294.11.

70.    For the above reasons, the Forest Service violated the Roadless Area Conservation Rule in approving the Tecuya Project and its Decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A).

## FOURTH CAUSE OF ACTION

### Endangered Species Act Violation: Arbitrary and Capricious "Not Likely To Adversely Affect" Determination

71.    The allegations in each paragraph above are incorporated herein by reference.

72.    On January 28, 2019, the U.S. Fish and Wildlife Service issued a letter to the Forest Service stating that the agency concurred with the Forest Service's determination that the Tecuya Project is "not likely to adversely affect" the endangered

California condor.

73.     However, both the Forest Service and the U.S. Fish and Wildlife Service, in making their "not likely to adversely affect" conclusions, ignored the U.S. Fish and Wildlife Service's condor tracking data showing that the Project area includes numerous roosting sites for California condor.

74.     Plaintiffs sent a 60-day notice of intent to sue under the Endangered Species Act to the Forest Service on July 10, 2019, explaining that the Forest Service's failure to properly address and protect condor roosting sites violates the Endangered Species Act.

75.     By failing to address their own condor tracking data showing roosting sites in and near the Project area, the U.S. Fish and Wildlife Service failed to ensure protection for the condor and prevent adverse impacts to the condor.  The U.S. Fish and Wildlife Service "not likely to adversely affect" concurrence was therefore arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under the APA. 5 U.S.C. § 706(2)(A).

## FIFTH CAUSE OF ACTION

### National Forest Management Act Violations: Failure to Comply With Forest Plan

76.     NFMA requires the creation of Forest Plans and requires projects within the Forest to follow the Forest Plan.

77.     The Los Padres Forest Plan and Tecuya Project Decision Memo require, per Forest Plan Standard 28: "Avoid or minimize disturbance to breeding and roosting California condors by prohibiting or restricting management activities and human uses within 1.5 miles of active California condor nest sites and within 0.5 miles of active roosts."

78.     Here, however, because the Forest Service has failed to properly identify the existence of over 50 condor roosting sites in or near the Project Area, and is instead outright ignoring those roosting sites, the Forest Service is not properly implementing Standard 28.

79.     For the above reasons, the Forest Service is in violation of NFMA, and its actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A).

## SIXTH CAUSE OF ACTION

### National Environmental Policy Act and National Forest Management Act Violations: Sensitive Species

80.     NFMA requires the creation of Forest Plans and requires projects within the Forest to follow the Forest Plan.

81.     The Los Padres Forest Plan and Tecuya Project Decision Memo require surveys for spotted owls. To date, on information and belief, the Forest Service has not conducted the surveys.

82.     The Tecuya Decision also states that "suitable habitat for [the yellow-blotched salamander] is present within the project area, but the species has not been documented." There are, however, at least two known occurrences within the Project area.

83.     For the above reasons, the Tecuya Project is in violation of NFMA and the Decision approving the Project is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief:

1.     Declare that Defendants U.S. Forest Service and Forest Supervisor Elliott violated NEPA, NFMA, the Roadless Area Conservation Rule, and the APA in approving the Tecuya Project;

2.     Declare that Defendant U.S. Fish and Wildlife Service violated the ESA and APA in issuing a concurrence letter for the Tecuya Project as to the endangered California condor;

3.      Declare unlawful, vacate, and set aside Defendants' U.S. Forest Service and Forest Supervisor Elliott Decision approving the Tecuya Project;

4.      Grant Plaintiffs such temporary restraining orders or preliminary injunctions as they may request;

5.      Award Plaintiffs costs and reasonable attorneys' fees as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and any other statute;

6.      Retain jurisdiction of this action to ensure compliance with its decree; and

7.      Any other relief as the Court deems just and proper.


Respectfully submitted this 10th day of July, 2019,


/s/ Justin Augustine
Justin Augustine
Brian Segee
CENTER FOR BIOLOGICAL
DIVERSITY

Attorneys for Plaintiffs