**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Los Padres ForestWatch, et al.

   Plaintiffs,

      v.

United States Forest Service, et al.

   Defendants

      and

American Forest Resource

Council, et al.

   Defendant-Intervenors.

Case No. 2:19-cv-05925-VAP-KSx

**Order DENYING Plaintiffs'**
**Motion for Summary Judgment**
**(Doc. No. 108)**

    Plaintiffs Los Padres Forestwatch, Earth Island Institute and Center for Biological Diversity (collectively, "Plaintiffs") filed a Motion for Summary Judgment ("Plaintiffs' MSJ") on September 23, 2022.  (Doc. No. 108). Defendant-Intervenors American Forest Resource Council, California Forestry Association, and Associated California Loggers (collectively, "Defendant-Intervenors") filed a Cross-Motion for Summary Judgment

("Defendant-Intervenors' Cross-MSJ") and opposition to Plaintiffs' MSJ on October 7, 2022.  (Doc. No. 110).  Federal Defendants United States Forest Service and Christopher Stubbs, Supervisor, Los Padres National Forest (collectively, "Federal Defendants") likewise filed a Cross-Motion for Summary Judgment ("Federal Defendants' Cross-MSJ") and opposition to Plaintiffs' MSJ on October 7, 2022.  (Doc. No. 111).

Plaintiffs filed a combined opposition to Defendant-Intervenors' and Federal Defendants' Cross-MSJs ("Plaintiffs' Opp'n") and reply in support of Plaintiffs' MSJ on October 17, 2022.  (Doc. No. 112).  On October 24, 2022, Federal Defendants and Defendant-Intervenors each filed a reply in support of their respective Cross-MSJs.  (Doc. Nos. 116, 115).

After considering all papers filed in support of, and in opposition to, the motions, as well as the arguments advanced at the hearing, the Court **DENIES** Plaintiffs' Motion for Summary Judgment, and **GRANTS** Defendant-Intervenors' and Federal Defendants' Cross-Motions for Summary Judgment.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

On September 30, 2019, Plaintiffs initiated this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.  (*See* Doc. No. 15).  Plaintiffs challenged the United States Forest Service's ("Forest Service") decision approving the Tecuya Ridge Project ("Project") on the grounds that the decision violated the Roadless Area Conservation Rule

("Roadless Rule") and the National Environmental Protection Act ("NEPA"). (*Id.*; Doc. No. 102, First Supplemental Amended Complaint ("FAC")).  On August 20, 2020, Magistrate Judge Patrick J. Walsh granted summary judgment in favor of Federal Defendants and Defendant-Intervenors.  (*See* Doc. No. 61).

On appeal, the Ninth Circuit affirmed the grant of summary judgment on the issue of whether the Forest Service's decision to approve the Tecuya Project violated NEPA.  *See Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649, 664 (9th Cir. 2022).  The Ninth Circuit concluded, however, that the Forest Service's determination that the Tecuya Project complied with the Roadless Rule was arbitrary and capricious.  *Id.* at 659. Accordingly, the Ninth Circuit vacated the district court's order granting summary judgment on that issue and remanded the case to the Forest Service to explain why 21-inch diameter at breast heigh ("DBH") trees qualified as "generally small diameter timber" under the Roadless Rule.  *Id.*

Plaintiffs moved to reopen the case and on September 7, 2022, Plaintiffs filed a Supplemental Amended Complaint.  (Doc. No. 102). Plaintiffs also filed a Supplemental Administrative Record, attaching Exhibits 1 through 14.  (*See* Doc. No. 104, Supplemental Admin. Record ("AR")).  On September 23, 2022, Plaintiffs filed their Motion for Summary Judgment. (Doc. No. 108, "Plaintiff's MSJ").

1       On October 7, 2022, Federal Defendants and Defendant-Intervenors

2   each filed a Cross-Motion for Summary Judgment and opposition to

3   Plaintiffs' MSJ.  (*See* Doc. Nos. 111, 112).

4

5       On October 17, 2022, Plaintiffs filed a combined opposition to Federal

6   Defendants' and Defendant-Intervenors' Cross-MSJs and reply in support of

7   Plaintiffs' MSJ.  (*See* Doc. No. 112).

8

9       On October 24, 2022, Federal Defendants and Defendant-Intervenors

10  each filed a reply in support of their respective Cross-MSJs.  (Doc.

11  Nos. 115, 116).

12

13  **B.    TECUYA RIDGE SHADED FUELBREAK PROJECT**

14      When reviewing an agency action under the APA, a court must

15  generally "limit its review to the administrative record."  *San Luis & Delta-*

16  *Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014); *see, e.g.*,

17  *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir.

18  2012) ("Because this is a record review case, we may direct that summary

19  judgment be granted to either party based upon our review of the

20  administrative record.").  Accordingly, the facts described below are taken

21  from the Supplemental Administrative Record.

22

23      The Tecuya Ridge is located in the Los Padres National Forest in

24  Kern County, California.  (AR 11245–11246).  Since 1998, fifteen wildfires

25  have burned within the Tecuya Ridge area and approximately sixty-seven

26  percent of those fires were caused by human-related activities.  (*Id.*

United States District Court
Central District of California

4

at 11244).  The overcrowded stands of trees in Tecuya Ridge are vulnerable to loss by insects, disease, and wildfire.  (*Id.* at 11247).  Much of the area has not burned in over 100 years and "has missed its fire return intervals due to the Forest Service's successful fire suppression efforts[,]" which have led to "unstable conditions in the mixed conifer and pinyon-juniper stands by allowing widespread accumulation of fuels in the form of litter accumulations, coarse woody debris, and understory growth of shrubs and conifer regeneration."  (*Id.* at 11270).

Accordingly, the Forest Service proposed the Tecuya Ridge Shaded Fuelbreak Project ("the Project") in March 2018.  *Los Padres ForestWatch*, 25 F.4th at 653.  The Project authorizes the thinning of 1,626 acres of forest stand and brush fields in the Tecuya Ridge.  (AR 11244).  The July 1, 2022, Revised Decision Memo explains that the Project is needed to "provide safe and effective locations from which to perform fire suppression operations, to slow the spread of wildland fire" by creating "strategic fuelbreak locations, and to reduce the potential for the loss of life, property, and natural resources."  (*Id.* at 11248).  To accomplish these goals, the Project requires thinning existing stand densities to "help increase the forests resilience to insects and disease by lowering the amount of trees that are competing for limited resources such as water."  (*Id.*).

The project area contains mixed conifer and pinyon-juniper dominated stands.  (*Id.* at 11267).  The dominant conifer species within the project area is the Jeffrey pine, which grows to approximately 90-inches DBH.  (*Id.*).  The Forest Service conducted stand exams within the project area and

5

determined that the overall tree diameters ranged from less than 1-inch DBH to 42-inches DBH.  (*Id.*).  Some areas within the Project have up to 480 trees per acre—a stocking level that "exceeds the natural range of variation and is more than double the desired condition[.]"  (*Id.*).  Additionally, stand exams showed that the area is "overgrown with smaller diameter trees."  (*Id.*).

The Revised Decision Memo states that approximately 66-percent of the Project area overlaps with the Antimony Inventoried Roadless Area ("Antimony IRA").  (*Id.* at 11257).  Within this area, the Forest Service will remove only "generally small diameter trees within the 0–14 [inch] diameter class with a small number of trees thinned within the 14–28 [inch] diameter class (up to 21 DBH) . . . ."  (*Id.*).  The majority of the trees (approximately 73%) to be thinned fall within the 0–2 inch size class and nearly all of the trees to be thinned (98.5%) fall within the 0–14 inch non-commercial size class.  (*Id.* at 11267–11268).

The Project proposes thinning a small number of trees up 21-inches DBH to "break up crown fuels enough to help prevent spread of fires if established within the crowns of trees."  (*Id.* at 11271).  Due to the distribution of trees in the Project area, thinning only the lower diameter class trees "will not result in the desired spacing and density levels throughout the project areas."  (*Id.*)  Accordingly, the Project will thin some of the middle and upper diameter class trees that are clustered near each other to reduce the risk of uncharacteristic wildfire effects.  (*Id.*)

6

United States District Court
Central District of California

## II.    LEGAL STANDARDS

### A.    Administrative Procedure Act

Plaintiffs seek review of the agencies' approval of the Tecuya Project under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  The APA directs that a court shall set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of the procedure required by law."  5 U.S.C. §§ 706(2)(A), (D); *see Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 964 (9th Cir. 2002) (citing 5 U.S.C. § 706*); see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (generally reaffirming the rule that an agency's reasonable interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation) (citing *Auer v. Robbins*, 519 U.S. 452, 461–63 (1997) and *Bowles v. Seminole Rock & Sand Co.*, 326 U.S. 410, 414 (1945)).

The district court "is not required to resolve any facts in a review of an administrative proceeding"; rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Accordingly, summary judgment is an appropriate vehicle for deciding APA cases.  *Id.*

### B.    Summary Judgment

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the

7

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).  Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  *Id.* (quoting 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720, at 335–36 (3d ed. 1998)).  If, however, the cross-motions are before the court at the same time, the court must consider the evidence proffered by both sets of motions before ruling on either one.  *Riverside Two*, 249 F.3d at 1135–36.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the

material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III.    DISCUSSION

The issue in this case is whether the Tecuya Project's proposed timber cutting violates the Roadless Rule. Plaintiffs seek a court order prohibiting the Tecuya Project until it conforms with the Roadless Rule. (Plaintiff's MSJ at 5).

### A.    Roadless Area Conservation Rule

The 2001 Roadless Area Conservation Rule ("Roadless Rule") was established to "initiate a nationwide plan to protect inventoried and uninventoried roadless areas" within national forests. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1105 (9th Cir. 2002). An "Inventoried Roadless Area" ("IRA") is an area that "provide[s] large, relatively undisturbed landscapes that are important to biological diversity and the long-term survival of many at risk species." Special Areas; Roadless Area

Conservation, 66 Fed. Reg. 3244, 3245 (Jan. 12, 2001); *see also* 36 C.F.R.
§ 294.11.

The Roadless Rule generally prohibits timber cutting, sale, or removal in IRAs because those activities "have the greatest likelihood of altering and fragmenting landscapes resulting in immediate, long-term loss of roadless area values and characteristics."  Special Areas; Roadless Area Conservation, 66 Fed. Reg. at 3244.  The Rule does, however, provide some exceptions.  For example, "timber may be cut, sold or removed" in IRAs if the Responsible Official determines:

> (1) The cutting, sale, or removal of generally small diameter timber is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.
>
> > (i) To improve threatened, endangered, proposed, or sensitive species habitat; or
> >
> > (ii) To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period[.]

36 C.F.R. § 294.13.

The Roadless Rule defines "roadless area characteristics" as "[r]esources or features that are often present in and characterize" IRAs, including:

(1) High quality or undisturbed soil, water, and air;
(2) Sources of public drinking water;
(3) Diversity of plant and animal communities;
(4) Habitat for threatened, endangered, proposed, candidate, and sensitive species and for those species dependent on large, undisturbed areas of land;
(5) Primitive, semi-primitive non-motorized and semi-primitive motorized classes of dispersed recreation;
(6) Reference landscapes;
(7) Natural appearing landscapes with high scenic quality;
(8) Traditional cultural properties and sacred sites; and
(9) Other locally identified unique characteristics.

36 C.F.R. § 294.11.


1.      Roadless Rule Interpretation

Plaintiffs argue that the Court should not defer to the Forest Service's interpretation of the Roadless Rule's exception for logging "generally small diameter timber."  (Plaintiffs' MSJ at 10).  Instead, Plaintiffs argue that given the Roadless Rule's text, structure, history, and purpose, the regulation "prohibits logging in IRAs with only a narrow exception for 'areas that have become overgrown with smaller diameter trees.'"  (*Id.* at 14).


"[T]he possibility of deference can only arise if a regulation is genuinely ambiguous."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019).  Here, Plaintiffs have not provided any evidence that the regulation is ambiguous or offered any reasons why the Court should not rely on the plain-text reading of the Roadless Rule.  Nevertheless, after a careful consideration of the

Roadless Rule, the Court finds that that the regulation is not genuinely ambiguous.  *See id.* at 2415 (explaining to determine whether a regulation is genuinely ambiguous, "a court must 'carefully consider[]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on") (alteration in original) (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (Scalia, J., dissenting)).

Plaintiffs further ask the court to read the word "generally" out of the Roadless Rule and substitute in "only."  (Plaintiffs' MSJ at 14).  Courts must "resist reading words or elements into a statute that do not appear on its face."  *Pac. Coast Fed'n of Fishermen's Associations v. Blank*, 693 F.3d 1084, 1095 (9th Cir. 2012) (quoting *Dean v. United States*, 556 U.S. 568, 572 (2009)).  For these reasons, the Court declines to adopt Plaintiffs' proposed interpretation.

2.  "Generally Small Diameter Timber"

"[W]hether the Forest Service may harvest timber in an inventoried roadless area is a three-step inquiry."  *Los Padres ForestWatch*, 25 F.4th at 656 (quoting *All. for the Wild Rockies v. Krueger*, 950 F. Supp. 2d 1196, 1214 (D. Mont. 2013)).  "First, the timber to be harvested must be 'generally small diameter.'  Second, the harvest must be needed for one of two listed purposes [as defined in 36 C.F.R. § 294.13].  Third, the harvest must maintain or improve one or more of the roadless area characteristics as defined in § 294.11."  *Id.*

United States District Court
Central District of California

The Ninth Circuit concluded that the Forest Service's Decision Memo satisfied the Roadless Rule's second and third requirements to cut timber in the Project's Antimony IRA, but failed to explain why the trees that would be cut qualified as "generally small diameter timber." *Id.* at 659–660. The Ninth Circuit held that although the Forest Service substantiated its determination that the Project will "maintain or improve" the Antimony IRA's characteristics, it did not provide a rational explanation of how 21-inch DBH trees would qualify as small diameter timber within the meaning of the Roadless Rule. *Id.* at 657–660. The Ninth Circuit pointed out that it "does not require the Forest Service to undertake any particular method of providing a reasoned explanation for its choice to designate trees of up to 21-inches dbh as 'generally small.'" *Id.* at 659. Still, the reviewing court must be able to discern how the Forest Service arrived at the 21-inch DBH measure for "generally small diameter timber." *See id.*

In the preamble to the Roadless Rule, the Forest Service commented that the term "generally small timber" is a relative term "[b]ecause of the great variation in stand characteristics between vegetation types in different areas." 66 Fed. Reg. at 3257. The Forest Service explained that determinations of what constitutes "generally small diameter timber" are "best made through project specific analysis or land and resource management plan NEPA analyses, as guided by ecological considerations." *Id.* Such determinations should consider "how the cutting or removal of various size classes of trees would affect the potential for future development of the stand," and the characteristics and relationships of plant and animal communities associated with the site and overall landscape. *Id.*

1

2       Plaintiffs claim that the Forest Service's intention to log trees up to 21-

3   inches DBH in the Antimony IRA exceeds the Roadless Rule's mandate to

4   log only "generally small diameter timber."  (Plaintiff's MSJ at 5).  First,

5   Plaintiffs contend that average tree diameter is an appropriate measure of

6   whether a tree is "small" because it "demarcates the smaller trees in the

7   stand."  (Doc. No. 108 at 13).  Due to the overabundance of smaller

8   diameter trees in the Tecuya Project Area, the mean diameter for stands in

9   the area is 7.2-inches DBH.  (AR at 11269).  Accordingly, Plaintiffs claim

10  that, in the Antimony IRA, "generally small trees" are those with a diameter

11  of approximately 7.2-inches or less and therefore, 21-inch trees cannot be

12  considered "generally small timber."  (Doc. No. 108 at 13–14).

13

14      Plaintiffs further argue that the Frazier Project provides additional

15  evidence that 21-inch DBH trees are not "generally small."  (*Id.* at 13).  Data

16  show that the trees on Frazier Mountain have a larger DBH on average than

17  the trees in the Tecuya Project.  (*Id.*; Dkt. 112 at 11).  The environmental

18  assessment for the Frazier Project defined "larger diameter" trees as those

19  trees with a DBH greater than 10-inches.  *Los Padres ForestWatch*, 25 F.4th

20  at 658.  The Ninth Circuit held that the Forest Service failed to "justify its

21  determination that 'larger diameter' trees in the Frazier Project area have a

22  dbh greater than ten inches while 'small diameter' trees in the Tecuya Ridge

23  Project have a dbh of up to 21 inches."  *Id.*

24

25      Here, the Forest Service's Revised Decision Memo explained that the

26  Frazier Project environmental analysis was conducted under different

United States District Court
Central District of California

standards than the Tecuya Project.  (AR at 11272).  The Frazier Project is located outside of any roadless area, so there was no analysis under the Roadless Rule of what constitutes "generally small diameter timber."  (*Id.*). Moreover, years after the Frazier Project was completed, California entered into severe drought conditions and larger trees within the project "began to die off at alarming rates."  (*Id.*).  Analysis showed that thinning the project to a maximum of 10-inches DBH "left the majority of trees at risk to mortality." (*Id.* at 11273).  The Forest Service took this information into consideration when designing the Tecuya Project, so that the stands "could better withstand the impacts of droughts and maintain or improve the desired roadless area characteristics."  (*Id.*).

In addition, the Forest Service cautioned against using average tree diameter as a measure for evaluating whether a tree is a large or small for a particular tree species or growing area.  (*Id.*).  They explained that"[t]his is because the management or disturbance history of a site often skews a stand's diameter distribution in a manner that undermines the utility of using the existing diameter distribution as an indication of what are 'small,' 'medium,' or 'large' trees."  (*Id.* at 11270).

Instead, the Forest Service states that growth potential is the most appropriate measure of whether a tree is "generally small diameter timber." (*Id.*).  For example, in the project area, the dominant tree species is the Jeffrey pine, which has a growth potential of up to 60 to 90-inches DBH in the area.  (*Id.*).  The stands in the Tecuya Ridge area were logged in the 1930's and 1960's, so the majority of trees within the project area are

smaller than the trees that once populated the site.  (*Id.*).  As a consequence of this historical logging, the existing Jeffrey pines within the project area are small-to-medium in size when considering the species' size potential.  (*Id.*).  So, even if a 21-inch dbh tree is larger than the average diameter for stands in the area, such trees are considered "small" when compared to that species' growth potential.  (*See id.*).

Plaintiffs dispute whether growth potential is an appropriate benchmark for whether a tree is small or large.  (Plaintiff's MSJ at 15). Plaintiffs also point out that every tree in the Antimony IRA is arguably small when compared to the tree's growth potential of 90-inches.  (*Id.*).

The Revised Decision Memo provides that the significant majority of trees to be thinned are within the 0 to 2-inch DBH size class, which is a small diameter tree even when compared to the stand's average diameter. (AR at 11268).  According to the Forest Service, while some larger trees will be harvested, "the trees to be harvested are generally smaller compared to the rest of the trees in the treatment area because the average tree diameter in the stands will increase once the trees are harvested."  *Alliance for the Wild Rockies*, 950 F. Supp. 2d at 1215; *see* AR at 11267. Accordingly, Federal Defendants and Intervenor-Defendants both argue that focus of tree removal in the Antimony IRA is on small trees, regardless of whether average tree diameter or growth potential are used as a measure.

To the extent Plaintiff argues that the Roadless Rule limits the Forest Service to cutting generally to only those areas that have become

United States District Court
Central District of California

overgrown with smaller diameter trees, the Revised Decision Memo demonstrates the Project area is overgrown with smaller-diameter timber. (*See* AR at 11267–69.  The Project focuses on thinning such smaller-diameter timber within the 0–14 inch DBH class range.  (*Id.* at 11271)  Few middle and upper-diameters trees that are clustered together will be thinned to prevent the spread of wildfires if established within the crowns of the trees and to reduce the risk of uncharacteristic wildfire effects.  (*Id.*)  Such an approach is consistent with the Rule's focus on areas that have become overgrown with smaller diameter trees, which is, in part, to prevent "fuel ladders" from reaching the crown of the dominant overstory trees.  (*Id.*)

The Roadless Rule provides the Forest Service with flexibility when determining what constitutes "generally small timber."  *See The Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Moreover, agencies are entitled to deference when defining "vague, undefined" terms.  *Id.*  The Forest Service provided the information lacking in its initial Decision Memo to explain its rationale for classifying trees up to 21-inches DBH as "generally small timber."  Accordingly, the Forest Service did not make a "clear error of judgment," *id.*, when it concluded that the timber to be harvested in the Tecuya Ridge Project is "generally small diameter timber."

///

///

///

17

# IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Federal Defendants' and Defendant-Intervenor's Motions for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:    12/5/22

Virginia A. Phillips
Senior United States District Judge